IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-1117-WDM-MJW

MARK A. STEIN,

    Plaintiff,

v.

BURT-KUNI ONE, LLC, d/b/a BURT-KUNI HONDA,

    Defendant.

**ORDER ON MOTION TO DISMISS AND/OR TO COMPEL ARBITRATION**

Miller, J.

This case is before me on the motion to dismiss or to compel arbitration, filed by defendant Burt-Kuni One, LLC (Burt-Kuni). Plaintiff Mark Stein opposes the motion, arguing that there is no valid arbitration agreement between the parties. I have reviewed the parties' written arguments and conclude that oral argument is not required. For the reasons that follow, the motion will be denied.

Background

Stein was employed as a sales consultant for Burt-Kuni from September 2002 until his termination in August 2003. He alleges that he was subjected to sexual harassment during his employment by the General Sales Manager, that he was discriminated against in the terms and conditions of his employment on the basis of his gender, and that he was suspended and terminated in retaliation for engaging in

protected conduct. In his complaint brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-1-2000e-17, and Colorado law, Stein asserts claims for gender discrimination and harassment, retaliation and wrongful discharge, and unpaid compensation under state law.

## Standard of Review

A motion to compel arbitration under the Federal Arbitration Act is governed by a standard similar to that governing motions for summary judgment. *Smarttext Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D. Kan. 2003). Thus, in this case, Defendants must present evidence sufficient to demonstrate an enforceable arbitration agreement. *Id.* at 1263. If this is shown, the burden shifts to Feldman to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56. *Id.* If Feldman demonstrates a genuine issue of material fact, then a trial on the existence of the arbitration agreement is required. 9 U.S.C. § 4; *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

## Discussion

Burt-Kuni moves to dismiss Stein's complaint for lack of jurisdiction or, in the alternative, to compel arbitration of his claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 3.[1] It emphasizes the general federal policy favoring arbitration of disputes.

---

[1] This Court's jurisdiction over the case is dependent upon the arbitration issue. 9 U.S.C. § 4 (motion to compel arbitration under written agreement may be

The presumption in favor of arbitration disappears, however, "when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). The Tenth Circuit relies on state law principles of contract formation to determine whether parties have agreed to arbitrate an issue or claim. *Id.*

Colorado applies principles governing contract formation to determine whether parties have agreed to submit a claim to arbitration. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). Thus, I must construe the language of any arbitration agreement to give effect to the parties' intent as determined from the plain language of the agreement. *Id.* I "will enforce the agreement as written unless there is an ambiguity in the language; courts should neither rewrite the agreement nor limit its effect by a strained construction." *Id.* As with any agreement, I must give an arbitration agreement effect based on the plain and ordinary meaning of its terms. A term is ambiguous only if a "disputed provision is reasonably susceptible on its face to more than one interpretation." *Id.* Unlike the general rule that ambiguities in a contract must be construed against the drafter, ambiguities in an arbitration agreement must be construed in favor of arbitration:

---

filed in federal district court "which, *save for such agreement*, would have jurisdiction under Title 28").

> If ambiguities are found in the arbitration agreement, we must afford the parties a presumption in favor of arbitration and resolve doubts about the scope of the arbitration clause in favor of arbitration. More specifically, we must compel arbitration unless we can say "with positive assurance" that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute. Moreover, a 'broad or unrestricted' arbitration clause makes the strong presumption favoring arbitration apply with even greater force.

*Id.* at 378.  *See also id.* at n.3.

Burt-Kuni relies on two documents to support its claim that Stein has agreed to resolve his claims in binding arbitration. First, it points to a Hiring Policy statement that Stein signed as part of his application for employment. This Hiring Policy provides:

> **Binding Arbitration** - The Company utilizes a system of alternative dispute resolution that involves binding arbitration, in part, because of the benefits (such as reduced expense and increased efficiency) that private binding arbitration can provide both the Company and employees. Agreeing to binding arbitration is a condition of application and employment with the Company.

Motion to Dismiss, Exhibit A.

The second document is the Employee Handbook. This document contains a paragraph referring to arbitration of employment disputes and generally describing arbitrable claims.[2] The paragraph does not state that the arbitration is binding, but it does notify the employee that, by "opting" to arbitrate Title VII claims, he or she would waive a jury trial. Exhibit B, at 16. The Handbook also contains an "Alternative

---

[2] The paragraph is not well written. In particular, the third sentence, referring to arbitrable claims, does not make grammatical sense.

4

Dispute Resolution Agreement." Exhibit B, at 52-53. This portion of the Handbook permits an employee to opt out of arbitrating Title VII claims and contains a signature block for an employee to acknowledge agreement to the terms set forth. *Id.* at 53.

Burt-Kuni argues Stein is obligated to arbitrate his claims because he signed the Hiring Policy and acknowledged he was aware of the Handbook.[3]

Stein opposes arbitration of his claims. In his response, he argues that the arbitration provisions in the Handbook are illusory because Burt-Kuni reserved the right to alter the its terms. The Handbook provides: "This handbook is not an employee contract, and it should not be considered to be a contract. The Dealership reserves the right to add, change or delete benefits and policies as it deems appropriate in its sole and absolute discretion." Exhibit B, at 3, ¶ 3. Similarly, the acknowledgment page of the Handbook states "the handbook is not an express or implied contract of employment" and "the information contained in it can be changed at the sole discretion of management." *Id.* (unnumbered page between 50 and 52).

As stated above, the presumption in favor of arbitration does not apply where the parties dispute the existence of a valid arbitration agreement. *Dumais v. American Golf Corp.*, 299 F.3d at 1220.

Stein relies on the Tenth Circuit's opinion in *Dumais*, where it held that "an

---

[3] Burt-Kuni does not contend that Stein signed the Agreement portion of the Handbook, and the exhibit attached to the Motion to Dismiss is not signed by Stein.

arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." In *Dumais*, the court was confronted with an employee handbook containing conflicting provisions, one of which permitted the employer to alter the arbitration agreement and one of which did not. The Tenth Circuit resolved the ambiguity against the employer, interpreting the handbook to allow the employer to alter the arbitration provision at will. Given this interpretation, it then agreed with other circuits that the power to unilaterally modify the provision rendered the arbitration agreement illusory.

In its reply brief, Burt-Kuni attempts to distinguish *Dumais* on the ground that it involved conflicting handbook provisions. This was not the basis for the holding that the arbitration agreement was illusory, however. Although it concedes that its Handbook permits it to unilaterally change the terms and conditions, it contends that the Alternative Dispute Resolution Agreement attached to the Handbook contains no such provisions and, inferentially, should not be rejected as illusory. Burt-Kuni maintains that the Handbook and the ADR Agreement are not "one seamless document, with one set of rules governing both." However, the copy of the Handbook provided by Burt-Kuni is not separate from the ADR Agreement; both are included in Exhibit B to the Motion to Dismiss. Moreover, the ADR Agreement, as provided to the court, bears consecutive page numbers to the Handbook: although the acknowledgment page following page 50 is unnumbered, the ADR Agreement begins on page 51.

I agree with Stein that the arbitration provisions in the Handbook, including the ADR Agreement, are illusory and unenforceable under *Dumais* because Burt-Kuni reserved the right to alter the provisions "in its sole and absolute discretion."[4]

The effect of the Hiring Policy is another matter, however. This document does not contain a provision permitting Burt-Kuni to alter it in its discretion. Further, Stein signed the Policy in September 2002, shortly before he began his employment with Burt-Kuni.

With regard to the Hiring Policy, Stein argues the document language is ambiguous and incomplete and does not create a binding arbitration agreement because it does not describe the claims covered or the procedures to be used.[5] He

---

[4] Even were I to agree with Burt-Kuni that the ADR Agreement was separate from the Handbook (and thus not illusory), there is no clear evidence that Stein ever signed the Agreement or otherwise agreed to its terms, including its term permitting an employee to opt out of arbitration of Title VII claims. Burt-Kuni attaches the Affidavit of Judy Grinestaff to its reply brief as evidence that Stein signed both the acknowledgment of the Handbook and the ADR Agreement and gave them to Grinestaff, but even the ADR Agreement following this Affidavit is unsigned.

[5] Stein also contends the Hiring Policy is unenforceable because he was not afforded an express opportunity to opt out of arbitration of Title VII claims. The Tenth Circuit has not required that waiver of statutory rights be "clear and unmistakable" in private agreements. *Williams v. Imhoff*, 203 F.3d 758, 763-64 (10th Cir. 2000) (distinguishing *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998) (union's waiver in collective bargaining agreement of individual statutory rights must be clear and unmistakable)).

In addition, he claims the Hiring Policy was superseded by the Handbook based on a statement in the Handbook providing: "This handbook is effective beginning August 1, 2002, and supersedes all previous statements, memos[,] policies and practices that are in conflict with its provisions." Exhibit B, p.1. The provision refers to prior statements and, by its terms, does not apply to Stein's Hiring Policy that was signed approximately one month later.

7

asserts he signed the Policy without receiving or reviewing a copy of the Handbook or other explanation of the terms of any arbitration agreement, although Burt-Kuni points out that the Hiring Policy itself provides that questions regarding the policies may be addressed to the "Controller of the dealership."  Exhibit A.

Neither party provides, and I am unaware of, any authority discussing the validity and scope of an arbitration provision that is silent regarding the claims subject to arbitration and the procedures to be followed.  Although both Colorado courts and the Tenth Circuit favor a broad interpretation of an arbitration agreement in favor of arbitrability of disputes, those cases generally involve agreements with at least some language concerning scope and applicability.  *See, e.g., Allen v. Pacheco*, 71 P.3d at 379 (medical malpractice claim subject to arbitration)  I agree with Stein that such terms are essential parts of an arbitration agreement, particularly where the agreement may cover statutory claims such as the Title VII claims at issue here.

Colorado courts have applied the Restatement (Second) of Contracts § 204 to supply an omitted contract term where the parties have not agreed about a term "which is essential to a determination of their rights and duties."  *See, e.g., Costello v. Cook*, 852 P.2d 1330, 1332-33 (Colo. App. 1993).  According to Comment b of the Restatement, § 204 applies where parties to an agreement fail to foresee a situation that later arises or where the parties have expectations but fail to manifest them for some reason.  Colorado courts have interpreted this to authorize a court to supplement a contract "whenever the parties have not agreed regarding an essential

8

term." *Id.* at 1333.

In this case, however, I would not merely be supplying an omitted term but, in essence, writing an arbitration agreement for the parties. I conclude that the Hiring Policy is not itself a binding arbitration agreement between the parties but instead a notice to Stein that he would have to agree to binding arbitration as a condition of his employment. The Handbook provisions, including the ADR Agreement, then were intended to provide that agreement. As discussed above, however, Burt-Kuni's retention of the discretion to alter the Handbook's provisions rendered any arbitration agreement unenforceable.

Accordingly, it is ordered that the motion to dismiss or to compel arbitration, filed June 24, 2004, is denied.

DATED at Denver, Colorado, on September 28, 2005.

BY THE COURT:

/s/ Walker D. Miller
United States District Judge